# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

**KELLEY O'DONNELL**       :

    v.       :       No. 13-cv-1430

**MARIROSA LAMAS, et. al.**       :

## PETITION FOR PANEL REHEARING AND REHEARING EN BANC

Pursuant to Federal Rules of Appellate Procedure 35 and 40, Petitioner Kelley O'Donnell requests this Court to grant Panel Rehearing and Rehearing *En Banc* and to grant Petitioner a Certificate of Appealability. In support of thereof, she respectfully represents:

**A.    Introduction**

I express a belief, based upon a reasoned and professional judgment, that this matter presents questions of exceptional constitutional importance. This case presents the problem of a defendant who was facing the death penalty while being represented by a lawyer who was struggling with an addiction to crack cocaine. This Court has not previously addressed the weight that ought to be given to an attorney's substance abuse addiction, in determining whether a defendant has demonstrated a denial of her constitutional right to the effective assistance of counsel. Here, as described below, Petitioner's crack addicted trial attorney failed to marshal the evidence that could have shown, or at least raised a reasonable doubt, that Petitioner was *not* a participant in the murder of the deceased, but was,

instead, screaming for help and telephoning the police at the time of the killing. Nor did counsel seek expert testimony that would have refuted the forensic evidence presented by the Commonwealth to prove Petitioner's active participation in the offense. Such evidence was readily available to counsel, yet counsel neither sought nor introduced it. Indeed, counsel did not even appear for the first three days that trial was scheduled. No explanation was ever given for his absence.

This is an exceptionally important constitutional question, for it not only calls into question the adequacy of a defense in a capital case, but also the duty of the bench and bar both to recognize the devastating impact cocaine addiction can have on the legal profession and to police and care for those of its members who are struggling with such problems. Here, despite the importance of these questions, no court, state or federal, has even granted an evidentiary hearing to determine the impact of counsel's addiction on the preparation and presentation of Ms. O'Donnell's defense. Without such a hearing and without the opportunity to develop the facts of her lawyer's addiction and failures, no deference should be due to the state court's ruling. And now this Court has denied a COA, precluding Petitioner from even presenting her claims and her request for an evidentiary hearing.

One cannot help but wonder if these issues would be dismissed so readily, if Petitioner came before this Court as a death sentenced prisoner. Yet, although

Petitioner is serving a sentence of life imprisonment without parole, these significant questions have been dismissed as not even worthy of a COA, and the concerns of a capital defense conducted by a crack addicted lawyer have been swept quietly under the rug. Indeed, the panel's Order denying COA does not even mention Petitioner's claim that her lawyer represented her while addicted to, and abusing, crack cocaine. Reargument is necessary to address these substantial constitutional concerns.

Ms. O'Donnell's claims are, at a minimum, ones that "reasonable jurists could debate (or for that matter, agree that) the claim should be resolved in a different manner". Miller-El v. Cockrell, 537 U.S. 322, 366 (2003). This Court should grant her the opportunity to argue these issues on appeal. In particular, she deserves the chance to respond to the new rationale employed for the first time by a Panel of this Court in denying her request for a Certificate of Appealability.

**B.    Trial counsel's crack addiction**

Petitioner's trial attorney suffered from a debilitating addiction to crack cocaine at the time of her trial. To establish this fact, Petitioner has introduced the affidavit of his legal secretary, explaining how she had to look for him in crack houses, when Philadelphia judges called his office asking why he failed to appear

in court. (Affidavit; Reproduced Record ("R.R.") at 74a).[1] Significantly, the commencement of Petitioner's own capital trial was delayed for three days, because trial counsel simply failed to appear. In spite of repeated telephone calls from the court to his office, trial counsel's three-day absence remained unexplained. (Quarter Sessions Entries; R.R. at 100a).

Petitioner has also introduced the notes of testimony from a contempt proceeding in Philadelphia's Municipal Court, during which counsel acknowledged his longstanding addiction. (R.R. at 94a).[2] In addition, Petitioner has introduced an Opinion issued by the Pennsylvania Supreme Court Disciplinary Board, at the conclusion of trial counsel's subsequent disciplinary proceedings. At his hearing before the Disciplinary Board, trial counsel again acknowledged his long term cocaine addiction, which predated the commencement of Petitioner's trial. (Order and Opinion, No. 14 DB 2006 at p.4 ¶9, p.5 ¶12).[3]

---

[1] The Reproduced Record ("R.R.") from Ms. O'Donnell's state court appellate proceedings has been submitted as an Exhibit in conjunction with her 2254 petition.

[2] The notes of testimony from trial counsel's contempt hearing, in their entirety, appear in the Reproduced Record at R.R. 75a-99a.

[3] In addition, after Petitioner's trial and during the pendency of Petitioner's post-conviction proceedings, trial counsel Steven Segal (Philadelphia Police Photo No. 850714) has been arrested twice. See Commonwealth v. Segal, MC 0311-5098 1/1 (aggravated assault); Commonwealth v. Segal, MC 0608-0687 1/1 (Driving Under the Influence of Drugs or Alcohol and Criminal Mischief).

Although Petitioner is no longer facing a death sentence (her death sentence was vacated on direct appeal and, at resentencing, a jury unanimously rejected the aggravating circumstance alleged by the Commonwealth), counsel's performance during her first penalty phase proceeding exemplifies the same lack of preparation and concern as the guilt phase performance at issue here. Counsel's presentation on Petitioner's behalf was incredibly cursory, consuming only *four pages* of the notes of testimony from that proceeding. On direct appeal, the Pennsylvania Supreme Court did not reach any issues relating to trial counsel's penalty phase performance. Nevertheless, counsel's level of preparation was so inadequate, that the Court felt compelled to make the following scathing assessment:

> Without dissecting all of the arguments presented by both parties, it is difficult to disagree with Appellant that a defense which amasses only four pages of transcript simply does not reflect adequate preparation or development of mitigating evidence by counsel representing a capital defendant in a penalty phase hearing.

Commonwealth v. O'Donnell, 740 A.2d 198, 214 n.13 (Pa. 1999).

Every year, federal and state authorities expend millions of dollars and countless law enforcement hours arresting, prosecuting, and incarcerating untold numbers of individuals for selling and using cocaine. The rationale for this enormous effort and expense is plain: cocaine has a profound negative effect upon those who become addicted. *See* Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J. concurring) ("[P]etitioner's crime [PWID cocaine] threatened

to cause grave harm to society"); Commonwealth v. Ramos, 573 A.2d 1027 (Pa. Super. 1990) (describing "The Drug Problem" and its "devastating impact"). Nevertheless, in this case, reviewing courts have repeatedly defended the performance of a drug addicted lawyer who failed to present a wide variety of exculpatory evidence—most of which had been provided to him by the Commonwealth during discovery—at Petitioner's capital trial.

## C. Evidence trial counsel failed to present

As a result of his crack addiction and consequent failure to prepare for trial, Petitioner's trial lawyer failed to present readily available evidence which demonstrated that Petitioner was not a co-conspirator in a plan to lure the decedent to the apartment where she staying, in order to rob, murder, and dismember him. Had her attorney presented it at her trial, this evidence would have established the truth of a post-arrest confession given by her codefendant/boyfriend. In that signed statement, codefendant William Gribble admitted that he murdered the decedent spontaneously, without Ms. O'Donnell's assistance, when he came home and unexpectedly interrupted a sexual encounter between Petitioner and the decedent. (Investigation Interview, 11-14-92; R.R. at 70a-73a).

On direct appeal, the Pennsylvania Supreme Court awarded Ms. O'Donnell a new death penalty hearing. Consequently, unlike most petitioners alleging the ineffectiveness of trial counsel, Petitioner has had the opportunity to introduce all of

the evidence that her trial attorney failed to present. When she did so, the new jury unanimously determined that the Commonwealth had failed to make out the robbery aggravator. Thus, the outcome of her new penalty hearing demonstrates that, "more likely than not," the outcome of her trial would have been different. Strickland v. Washington, 466 U.S. 668, 693-694 (1984). Although most habeas corpus petitioners can only speculate about what would happen at a new trial, this case provides as close to a "dry run" as the law allows.

The specific evidence which trial counsel failed to introduce included the following:

1.  Trial counsel failed to introduce a 911 radio tape, provided to him by the Commonwealth during pre-trial discovery. This 911 tape indicated that Petitioner—an alleged co-conspirator in a plan to ambush, rob and kill the decedent—was screaming for help at the probable time of the murder and that, while her codefendant was attacking the decedent, Petitioner was actually telephoning the police and urging them to hurry to the scene.

The police received two 911 calls, minutes apart, from the house where the murder occurred. The first call was from Petitioner, expressing her imminent fear of her boyfriend and urging the police to hurry to the crime scene. (R.R., at 103a) ("You gotta get here quick"). Minutes later, the police received a second call from Joe Boles, an uninvolved neighbor living in the apartment above. Boles told the

7

911 operator that a woman was screaming and that it sounded like someone was being killed in the apartment below. (R.R., at 103a-104a).

2. Trial counsel also failed to present the live testimony of Mr. Boles, the upstairs neighbor, indicating that Ms. O'Donnell was screaming "stop that" while codefendant Gribble was attacking the decedent. According to his post-incident statement to the police, Mr. Boles called 911 when he overheard loud "screaming and banging". To Mr. Boles, it sounded like "something was being thrown around." At the same time, he heard "a woman screaming." To Boles, "it sounded like someone was getting murdered." (R.R., at 114a-115a).

At a post-conviction hearing, Boles described the loud banging he heard coming from the apartment below in greater detail. To Mr. Boles, "it sounded like someone was being killed downstairs." (N.T. (PVM) 5/3/94 at 7). Importantly, along with the banging, Mr. Boles also testified that he heard a woman screaming and saying "*stop that*." (N.T. (PVM) 5/3/94 at 6).

3. Trial counsel also failed to secure and introduce hospital discharge records indicating that Petitioner was in the hospital during the two-hour period when, according to the Commonwealth's forensic evidence, she was allegedly assisting Mr. Gribble to dismember the decedent's remains. At her trial, the Commonwealth's medical examiner testified that two people had necessarily been involved in dismembering the decedent's remains and that, based upon the forensic

8

evidence, this process occurred during the first hour after his death. However, had trial counsel secured Petitioner's medical records, he could have demonstrated that, within minutes of the above-described 911 calls, the police (who were not yet aware that the crime had occurred) actually transported Petitioner away from the crime scene to a nearby hospital. Those same records would have demonstrated that Petitioner remained in the emergency room of that hospital for the next two hours, i.e., during the period when the Commonwealth claimed she was assisting codefendant Gribble to dismember the decedent. (R.R., at 107a, 108a).

4. Counsel also failed to present the testimony of Rose Ann Stoddart. Ms. Stoddart had previously given a statement to the police, which refuted the testimony of the only witness relied upon by the Commonwealth to establish that the defendants intended to rob the decedent.

At Petitioner's trial, the Commonwealth introduced the testimony of a witness named Ada Vega. During her testimony, Ms. Vega claimed that she saw the decedent flash a large money roll, when he purchased a leather jacket from Ms. O'Donnell. (N.T. 6/16/93 at 47-49). The Commonwealth employed Ms. Vega's testimony about a money roll to establish a motive for Petitioner alleged decision to rob the decedent later that night. (N.T. 6/30/93 at 518).

Once again, had trial counsel employed the information provided to him in discovery by the Commonwealth, he could have countered this important

9

component of the Commonwealth's case. The police had also interviewed Rose Ann Stoddart, because she too had witnessed the decedent's purchase of the leather jacket. In her statement to the police, Ms. Stoddart explained that the decedent purchased the jacket with money taken directly from the cash register in his store. (Statement, Rose Ann Stoddart; R.R., at 120a-124a).

5. Counsel also failed to present expert evidence that would have debunked the medical examiner's flawed forensic determination that two persons were necessarily involved in the victim's dismemberment. The Pennsylvania Supreme Court specifically relied upon ME's forensic conclusions in determining that both the codefendant and Petitioner were involved in the dismemberment process and in rejecting Petitioner's claim that the codefendant acted alone. O'Donnell, *supra*, 740 A.2d at 203 n.4. Trial counsel was ineffective because he failed to retain and to introduce his own expert to contradict the ME's highly questionable determination. At her new penalty phase hearing, Petitioner's new counsel introduced expert testimony which refuted the ME's questionable medical conclusions.

Petitioner realizes that this case is factually complex. The foregoing, unavoidably abbreviated description cannot truly convey the significance of the evidence trial counsel failed to present. Nor can it convey how uncomplicated it would have been for any moderately prepared attorney to assemble and present this

evidence. For the most part, trial counsel's task would have involved little more than reading the discovery and issuing subpoenas for neutral witnesses, so that they could repeat what they had already stated during their interviews with the police. This Court should afford Ms. O'Donnell the opportunity to argue that the state court's decision constitutes "an unreasonable application" of clearly established law, or involves an "unreasonable determination of the facts" under 28 U.S.C. § 2254(d)(1)-(2).

**D. The Panel's new rationale for denying a Certificate of Appealability**

In rejecting Ms. O'Donnell's petition for a Certificate of Appealability, the Panel has advanced a new rationale, never argued below by the Commonwealth and never relied upon by any prior reviewing court. Petitioner should be afforded the opportunity to respond to this new explanation for the rejection of her claims.

Ms. O'Donnell has at all times asked reviewing courts to view her ineffectiveness claims through the prism of the new jury's penalty phase determination. The sole aggravating circumstance presented was that the killing was committed during the course of a felony, an aggravating circumstance that should have been virtually automatic given the existence of a robbery conviction that bound the jury. Yet, when the new jury heard the previously unpresented evidence, it unanimously rejected the robbery aggravator, thus resulting in a life sentence. Had this same evidence been presented at guilt phase, it is more likely

11

than not that, but for counsel's ineffectiveness, a reasonable factfinder would have at least had a reasonable doubt about Petitioner's participation in a murder and conspiracy and, thus, the outcome of her trial would have been different.

In its Order denying her a Certificate of Appealability, the Panel has suggested—for the first time at any point during these lengthy state and federal proceedings—that the new jury may have rendered its verdict pursuant to <u>Commonwealth v. Lassiter</u>, 722 A.2d 657 (Pa. 1998). (<u>Order</u>, 8/8/13, attached here as Exhibit "A"). <u>Lassiter</u> holds that, in Pennsylvania, an accomplice to a robbery/murder who did not inflict the fatal wound is not subject to this aggravating circumstance. *Id.* at 662.

Petitioner requests the opportunity to respond to this never before raised argument. Under any fair reading of the evidence and arguments presented by each side at the new penalty phase hearing, there is *no* reason to conclude that the jury actually returned its verdict on the basis of <u>Lassiter</u>. On the contrary, there is every reason to believe that jury determined that Ms. O'Donnell was not involved in a robbery. Based on the evidence that prior counsel failed to present, the jury concluded that Petitioner was actually calling the police and screaming "stop that", when her jealous boyfriend unexpectedly discovered her with the decedent. At best, there is only a "possibility" that the jury could have relied on <u>Lassiter</u>. Such a possibility, however, does not preclude the reasonable *probability* that trial

counsel's failures and errors prejudiced Petitioner.  At a minimum, the panel's reasoning raises questions that ought to at least be addressed after full briefing and argument.  For that reason alone, a COA should be granted.

**Conclusion**

Undersigned counsel's research has not uncovered a case where this Court addressed a situation where a trial attorney's demonstrated crack addiction dramatically affected his ability to prepare and present readily available evidence of his client's actual innocence.  Here, a life sentenced petitioner who was represented by such an attorney respectfully requests the chance to present her appeal to this Court.

Respectfully submitted,

Paul M. George (25722)

*McKinney & George*
239 South Camac Street
Philadelphia, PA 19107
(215) 735-0598
pgeorge@mckinneyandgeorge.com

Attorney for Kelley O'Donnell

**CERTIFICATE OF SERVICE**

I certify that on the date indicated below, I served a copy of the attached Petition and accompanying exhibit upon the below named Assistant District Attorney *via* electronic filing.

Anne Palmer, ADA
District Attorney's Office
Three Penn Square South
Philadelphia, PA19107

Date:  October 21, 2013            s/*Paul M George*_____
                                   Paul M. George, Esquire